### EDMUND NEAL *v.* GILBERT LEWIS & ALS.

The statute of July 4, 1861, providing that no alteration of existing school districts shall be made without previous written recommendation of the selectmen and the superintending school committee, applies to the case where all the existing districts are altered at the same time, or the town is districted anew; the object of the law being to prevent the hasty and improvident alteration by the town of existing districts, upon the application of interested parties.

And it was *held* that the action of the superintending school committee and the selectmen should be had directly upon all the alterations proposed to be made, previous to the action of the town, and that the duty of these officers could not be delegated to the town or any other tribunal.

CASE for illegally assessing a tax against the plaintiff, in the town of Unity.

At a town meeting in the town of Unity, held for the purpose, on November 6, 1860, the following votes were passed:

*Voted,* That the town be re-districted into school districts, for the purposes of schooling.

*Voted,* That the selectmen be the committee to re-district the town into school districts, and report at the next annual meeting.

At the next annual meeting of the voters of the town, held March 12, 1861, the selectmen, as such committee, made their report, recommending changes in the boundaries of all the districts of the town, as they had up to that time been constituted, and defining the boundaries of each as recommended.

On the said day, and before action was taken by the town upon this report, the following papers were drawn up and signed, and are recorded in the records of the town, to wit:

The undersigned would recommend an alteration in the boundaries of the several school districts, in the town of Unity, agreeably to a vote passed by said town, the sixth day of November, 1860.

Unity, March 12, 1861.

(Signed,)             JOSEPH M. PERKINS,
*Superintending School Committee.*

The undersigned recommend an alteration in the several school districts in the town of Unity, agreeably to a vote passed by said town, the sixth day of November, 1860.

Unity, March 12, 1861.

(Signed,)       ·HARVEY HUNTOON,
            RANSOM SEVERNS,
            SELEM SLEEPER,
              *Selectmen of Unity.*

It was then voted to amend the report of the committee, by changing the boundaries of District No. 11, as recommended by said report; after which the meeting was adjourned to March 27th, at which time, on motions made by different individuals, it was voted to amend the report of the committee, by changing the boundaries, as recommended, of Districts Nos. 3, 4, 5, 6, 7, 10 and 12.

The boundaries of District No. 3 were so altered from the recommendation of the committee as to exclude from said district the territory of eight several farms which were within this district as recommended by the committee, while it added no territory not included in it by said recommendation; and District No. 7 was so altered from the recommendation of the committee as to leave in said district only the farm of Ransom Severns. Successive votes were then passed to adopt the report of the committee with respect to those several districts as amended. After which a vote was passed to adopt the report of the committee as amended.

District No. 3, as constituted by the above proceedings, held a meeting on the 10th of April, 1862, and voted to unite with District No. 7, for purposes of schooling, by a two-thirds vote of all the legal voters in the district; and about the same time, at a meeting of District No. 7, as thus constituted, (so far as a meeting of such a district could be held,) it was voted by said Severns to unite with said District No. 3, for purposes of schooling.

On the 30th of April, 1861, in pursuance of a warrant posted for the purpose, said Districts Nos. 3 and 7, as constituted by all the above proceedings, held a meeting at which the following votes were passed, to wit:

*Voted,* To build a new school house and necessary out-buildings, and furnish the same.

*Voted,* To raise the sum of six hundred dollars for said purpose.

Upon the two last mentioned votes the defendants, being selectmen of the town of Unity, assessed a tax upon the .polls and estate of the inhabitants of said Districts Nos. 3 and 7, among whom was the plaintiff, whose tax, as thus assessed, was $16.82, which being by them committed to the collector of taxes for the town, he in due form of law advertised, and on the 25th of October, 1862, sold the real estate of the plaintiff for the amount of said tax and costs, being ten dollars, amounting in the whole to $26.82, to redeem which the plaintiff afterwards paid to said collector the sum of $26.82.

It is agreed that judgment shall be rendered for the plaintiff or de-

fendant, according to the opinion of the court, upon the foregoing statement of facts, unless either party shall elect to go to trial upon the facts, in which event the case is to be discharged.

*Burke & Wait*, for plaintiff.

The alteration of the school districts, as made, has not the recommendation either of the superintending school committee or selectmen of the town. Districts Nos. 3 and 7 therefore, were not either of them legally constituted, and could not vote to unite, or, separately or unitedly, legally vote to raise money. The tax assessed was, therefore, illegal. Act of July 4, 1861, Pamphlet Laws, chap. 2507, p. 2456.

*Cushing*, for defendant.

I. The statute requiring the approval of the superintending committee, applies merely to partial alterations in the limits of particular districts, and not to the districting of the entire town. By re-districting the town all the existing districts were destroyed and a new system of districts adopted. The statute above alluded to cannot be held by implication to repeal the other statute empowering towns to district themselves.

II. The report of the committee and the selectmen was sufficiently given.

III. It does not appear that the plaintiff has suffered any damage. It appears by the case that the forms of a sale had been gone through with, but if the assessment of the tax was unlawful, the proceedings were void, and the plaintiff was under no necessity to redeem. In such case his payment would be merely voluntary.

The plaintiff's possession has not been interfered with, and he was not obliged to pay in order to recover or regain possession. No case has been cited to show that the mere act of unlawfully assessing a tax is actionable unless some damage has been occasioned by it.

BELLOWS, J. The case turns upon the construction of the law of July 4, 1861, Pamphlet Laws, ch. 2507, which provides that towns may be divided into school districts and their limits defined, and from time to time altered as convenience may require, by vote of the town; "provided that no alteration of existing districts shall be made without previous written recommendation of the superintending school committee and selectmen of the town, which shall also be recorded."

It is urged by the defendant's counsel that this recommendation is not necessary where the town is districted anew, and all the districts altered, as in this case. The terms, however, are explicit "that no alteration of existing districts shall be made" without such recommendation, and we see nothing to limit its application to cases where some number of the districts less than the whole are altered.

The object of the law was to prevent the hasty and improvident alteration of existing districts, upon the application of interested parties,

and although this may be less likely to happen where all the districts are altered at the same time, yet we see nothing in the law that suggests such a distinction, and we are of the opinion that no such distinction can be made.

The question then arises, whether the recommendation required shall specify the alterations to be made, and whether the town can make no other.

In this case the town voted that the selectmen be a committee to re-district the town and report at the next annual meeting of the superintending school committee, and the selectmen in writing recommended an alteration in the boundaries of the several school districts agreeably to this vote of the town, and there is nothing connecting it with the report of the selectmen as a committee, except that the recommendations were made on the day the report was made, and apparently afterwards, but before any action upon it.

If this could be regarded as a recommendation to make the alterations reported, it would have been sufficient if no changes from the report had been made by the town, but such changes were made in eight of the districts, and in respect to those changes there was no recommendation by those officers.

If these recommendations are to be regarded simply as advising the town to do what was proposed by its vote, it was, as we think, clearly insufficient; for it was clearly contemplated by the law that these officers should consider and approve the alterations that were proposed to be made—not that they should consent that the town should make such as it deemed expedient, for this duty was one that they themselves must perform, and could not be delegated to the town or any other tribunal, any more than the town can delegate to another its authority to make or alter such districts.

It follows then, we think, that the action of the selectmen and superintending school committee must be had, previously to the vote of the town, directly upon the expediency of the proposed alterations.

This, it is quite clear, has not been had in respect to those changes that were affected by amending the report of the committee. On the contrary, those changes must be regarded as in opposition to the views of the selectmen, when acting as a committee of the town; and in no sense can we find that they recommended them.

The case before us affords an illustration of the liability to act hastily in such matters, and with only a partial view of the subject, against which the law under consideration was designed to guard; for it will be perceived that in the midst of the numerous amendments that were made to the report of the committee, one of the districts, numbered seven, was so far changed from the report of the committee as to have but one farm and a single voter.

That district as thus constituted, and district numbered three, also altered from the report of the committee by disannexing eight farms from it, had undertaken to unite by a two-thirds vote of each district, for the purpose of schooling, and to build a school house for their joint accommodation; the money was voted, for the assessment of which upon the

plaintiff, among others this action is brought. As neither district was legally constituted, the vote to raise the money was invalid, and the plaintiff was not rightfully assessed.

It is urged that the plaintiff cannot recover the money paid by him to redeem the land sold for this tax, because, if the tax was illegal, the sale was a mere nullity, and a payment to redeem it must be regarded as voluntary. We think, however, that if this has been an illegal assessment, and the plaintiff has been compelled to pay it by a seizure of his property, or his person, he may maintain an action on the case for the illegal assessment, or, at his election, an action of trespass for the arrest or seizure. Such is the doctrines of *Walker* v. *Cochran*, 8 N. H. 166, and *Perry* v. *Buss*, 15 N. H. 222.

Nor would it be any answer to say, that, as the assessment was void, the party might wholly disregard it, and act as he would if none had been made, because the payment of such tax to release one's person or property from seizure, would be a prudent and reasonable act, and it would not be in the assessor's mouth to say that he paid it in his own wrong, or that it was merely voluntary, when the tax had been committed to the collector with the assessor's warrant to be collected.

Upon these views there must be judgment for the plaintiff for the amount paid by the plaintiff to redeem his land, with interest, unless the defendants elect a trial by jury.

*Judgment for plaintiff.*